Strafford
No. 84-566

# The State of New Hampshire

v.

# Joseph R. E. Saucier

July 17, 1986

*Stephen E. Merrill,* attorney general (*Bradford W. Kuster,* attorney, on the brief and orally), for the State.

*McNeill & Taylor,* of Dover (*John F. Dolan, Jr.,* on the brief and orally), for the defendant.

KING, C.J. The defendant was found guilty at a jury trial of second degree assault. RSA 631:2, III. The Superior Court (*Temple,* J.) sentenced him to six to twelve months in the house of correction, with three months suspended upon good behavior. The defendant appeals from his conviction, and we affirm.

On the evening of November 18, 1983, Joseph R. E. Saucier, the defendant, assaulted Joanne White at a dance held at the American Legion Hall in Rollinsford. Prior to that evening, Saucier and Ms. White had been dating for over one year, and they had planned to meet that night at the dance. As the evening progressed, the couple began to argue, and Ms. White eventually decided to leave early.

The assault began when Ms. White attempted to leave the Legion Hall. Before she got out the door, Saucier ran up to her and grabbed her, threw her against a wall, and held her by the throat. When Saucier released her, she went out the door to the parking lot. Saucier followed her, and he again grabbed her, this time holding on to her by her clothes, her hair, and her throat. Saucier picked her off the ground several times and threw her against parked cars. She struck the parked cars with her legs and back. During the assault, Saucier put his hands around her throat, choking her, and threatening that he was going to kill her.

Saucier then dragged Ms. White by her throat across the parking lot to a second entrance to the Legion Hall. He then picked her up and threw her across the Legion Hall lobby. She struck a door on the opposite side of the lobby. When Saucier began to drag her into the main hall, two police officers who were working at the dance

that evening came out to the lobby, found Saucier standing over Ms. White, and separated him from her.

As a result of the assault, Ms. White had bruises on her neck, back, shoulder, and legs. She had scratches on her lip and over her eyes. She was bleeding near her ear. For nearly a week, she had a sore throat, and she found it difficult to swallow. For about one month she had a bump behind her ear.

Saucier was indicted for second degree assault, RSA 631:2, III. The indictment alleged that Saucier committed second degree assault "by recklessly causing bodily injury to Joanne White . . . under circumstances manifesting extreme indifference to the value of human life."

Jury selection in this case took place on Monday, October 15, 1984, and the trial itself began on Friday, October 19, 1984. At the time of jury selection, the defendant's attorney, a public defender, was trying a jury case in superior court in another county. Despite requests to the judge in the other case, Saucier's attorney could not get away. On the Friday afternoon immediately preceding the beginning of jury selection, the trial court ordered that other counsel from the public defender's office handle jury selection in place of Saucier's counsel. The second attorney from the defender's office was advised of the change in plans on Friday evening, but was unable to prepare over the weekend.

A representative of the public defender's office appeared on Monday and objected to proceeding with the jury selection process under those circumstances, claiming that it violated Saucier's rights both to due process and to effective assistance of counsel under the State and Federal Constitutions. The public defender's office asked for a continuance. Over these objections, the court ruled that the jury selection process was to go forward despite the absence of Saucier's attorney "so as not to throw the entire selection process and the trial of cases for the next two weeks in disarray . . . ." The court noted that sufficient tools were available to the replacement public defender, including the jury questionnaires and the files of Saucier's lawyer, to allow the process to go forward. After the jury trial, the defendant was found guilty of second degree assault.

In this appeal we need to answer four questions: (1) whether the trial court's denial of a request for continuance of jury selection was an abuse of discretion in denying the defendant due process and the effective assistance of counsel; (2) whether the phrase "under circumstances manifesting an extreme indifference to the value of human life," in the context of the assault statute, is unconstitutionally vague; (3) whether there was sufficient evidence to show that Saucier acted with extreme indifference to the value of human life

when he attacked Ms. White; and (4) whether the trial court's instructions to the jury were misleading.

In answering the first and second questions, we will begin, as we must, by first making an independent analysis of the protections afforded under the New Hampshire Constitution, *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), using decisions of the United States Supreme Court and other jurisdictions only as aids in our analysis, *see Michigan v. Long*, 103 S. Ct. 3469, 3476 (1983). Thereafter, we need address federal constitutional issues only insofar as federal law would provide greater protections. *Ball, supra* at 232, 471 A.2d at 351.

The first issue is whether the trial court abused its discretion when it declined to give the public defender a continuance of the jury selection process in this case. The defendant argues that the trial court's failure to grant a continuance denied Saucier due process of law as well as the effective assistance of counsel guaranteed by the sixth amendment to the United States Constitution and part I, article 15 of the New Hampshire Constitution. We hold that there was no abuse of discretion in this case.

Whether to grant or deny a continuance is within the trial court's sound discretion, and we will not reverse a denial of a continuance unless we find that the trial court has abused its discretion. *State v. Barham*, 126 N.H. 631, 640, 495 A.2d 1269, 1275 (1985). As we noted in *Barham*, "'[t]he matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party . . . is compelled to defend without counsel.' 'There are no mechanical tests to determine when due process has been violated by the denial of a continuance, but in each case the totality of the circumstances must be considered.'" *Id.* (citations omitted).

In this case, looking at the totality of the circumstances, we find no violation of due process. The trial court found that a delay in jury selection would throw the court calendar into "disarray." The court afforded the public defender's office two and one-half days in which to prepare for jury selection. Jury selection is a limited procedure, *see State v. Bailey*, 127 N.H. 416, 421, 503 A.2d 762, 765 (1985) (traditionally, jury *voir dire* has been conducted by the trial court rather than by counsel, except in first degree murder and capital cases), and counsel should not need as much time to prepare adequately for it as he would need to prepare to try the whole case. *Cf. State v. Linsky*, 117 N.H. 866, 379 A.2d 813 (1977) (eight days adequate time to prepare for trial where the evidence was fresh and

the issues for trial limited). Nor was this a complex case requiring extraordinary amounts of time to prepare for jury selection.

 When a defendant makes an ineffective assistance of counsel claim, he must demonstrate two things. First, he must show that the representation he was afforded fell below an objective standard of reasonableness. Second, the defendant must prove he was prejudiced by his counsel's lack of competence. In other words, the defendant must show that there is a reasonable probability that the result would have been different but for his counsel's incompetence. *Breest v. Perrin*, 125 N.H. 703, 706, 484 A.2d 1192, 1194–95 (1984). When an ineffective assistance of counsel claim is made, reviewing courts start with the strong presumption that counsel's conduct falls within the limits of reasonable practice. *State v. Faragi*, 127 N.H. 1, 498 A.2d 723 (1985). Although the replacement public defender did not make use of the weekend to prepare, she did have and apparently did use approximately two hours on the day jury selection commenced in which to prepare. Further, there is no indication that the replacement public defender's work during jury selection fell outside the limits of reasonable practice. As the United States Supreme Court noted in *Morris v. Slappy*, 461 U.S. 1 (1983):

> "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel . . . . [O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel."

*Id.* at 11–12 (citations omitted).

 Although we uphold the trial court's denial of a continuance in this case, we also admonish the justices of the trial courts that in the future, when they are exercising their sound discretion in deciding whether to grant requested continuances, they should make every effort to accommodate the reasonable scheduling requests of attorneys.

 The next issue is whether, in the context of the assault statute contained in RSA chapter 631, the phrase "under circumstances manifesting an extreme indifference to the value of human life" is unconstitutionally vague. We hold that it is not.

 "A statute or government regulation is void for vagueness when it either forbids or requires 'the doing of an act in terms so vague that [persons] of common intelligence must necessarily

guess at its meaning and differ as to its application.'" *Sheedy v. Merrimack County Superior Court*, 128 N.H. 51, 54, 509 A.2d 144, 146 (1986) (quoting *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926)). "Mathematical exactness is not required in a penal statute, nor is a law invalid merely because it could have been drafted with greater precision." *State v. Dow*, 126 N.H. 205, 207, 489 A.2d 650, 651 (1985). In *Dow*, the defendant claimed that the words "extreme indifference to the value of human life" contained in the second degree murder statute, RSA 630:1-b, I(b) were unconstitutionally vague. We held that the phrase is "easily understood." *Id.* at 207, 489 A.2d at 652; *cf. State v. Dominguez*, 128 N.H. 288, 512 A.2d 1112 (1986).

 The words "under circumstances manifesting extreme indifference to the value of human life" are also easily understood in the context of RSA chapter 631. *See State v. Bailey*, 127 N.H. 416, 503 A.2d 762. "A person is guilty of [second degree assault] if he . . . [r]ecklessly causes bodily injury to another under circumstances manifesting extreme indifference to the value of human life." RSA 631:2, III (Supp. 1985). The comments to the 1969 Report of the Commission to Recommend Codification of Criminal Laws (hereinafter 1969 Report) state that, "[p]aragraph III also requires only bodily injury of any degree and the justification for permitting slight harm to be the basis for a felony conviction is that the defendant's conduct was of the most threatening sort and it is largely by chance that a murder was not committed." N.H. CRIM. CODE RSA 631:2, III (1985) (comments to 1969 Report). Thus, an attacker acts with "extreme indifference" when he inflicts any degree of bodily injury on a victim and when the "circumstances" of the attack demonstrate a blatant disregard for the risk to the victim's life. *State v. Bailey, supra* at 423, 503 A.2d at 768.

We do not consider the defendant's federal constitutional claims regarding the denial of a requested continuance and the alleged vagueness of the assault statute because we conclude that in these areas the Federal Constitution offers no greater protection than our State Constitution. *Ball*, 124 N.H. at 232, 471 A.2d at 351.

 The defendant's next argument, that there was insufficient evidence to prove that he acted with extreme indifference to the value of human life when he attacked Joanne White, rests on a fallacious interpretation of the statute. The defendant mistakenly assumes that the particular assaults actually committed must be life threatening to support a finding that the defendant acted with extreme indifference to the value of human life. In *Bailey*, we held to the contrary, that the statute does not require that the "'injury,' or

series of injuries, charged . . . themselves threaten life," but instead that the "'circumstances' of the crime manifest extreme indifference." *Bailey,* 127 N.H. at 423, 503 A.2d at 768. Therefore, the defendant's argument must fail if the circumstances surrounding the assault manifest an extreme indifference to life's value. The jury's verdict will be upheld unless "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *State v. O'Flynn,* 126 N.H. 706, 707, 496 A.2d 348, 349 (1985) (citations omitted). On appeal, we will view the evidence in the light most favorable to the State. *Id.*

In this case, there was sufficient evidence for a jury to find beyond a reasonable doubt that Saucier acted with extreme indifference to the value of human life in attacking Joanne White, where he repeatedly held her by her throat, choked her, dragged her across a parking lot while holding her throat, and repeatedly threw her against parked cars.

The defendant's final argument on appeal is that the trial court's jury instructions regarding the definition of "extreme indifference to the value of human life" were improper because they gave insufficient emphasis to the phrase "it is largely by chance that a murder was not committed" contained in the comments to the 1969 Report. What follows is the disputed portion of the trial court's instructions:

> "When we get to the area of circumstances manifesting extreme indifference to the value of human life, it is recognized that the injury may be slight and that it may not be serious, and that is not required. Most important, however, is the fact that the manner in which it came about resulted under circumstances indicating that it was of the most threatening sort, meaning the conduct of the actor or the perpetrator. While the commentary in the Code does relate to the fact that by chance it might have been something much worse, it doesn't really matter whether we are talking about a homicide or a very serious injury. The manner in which the injury, however slight it may be, came about, if it came about through a most threatening of situations, that is what is required here to be shown."

At the close of the jury instruction, the defendant objected to the portion of the charge just quoted and requested that the trial court read verbatim the comments to the 1969 Report dealing with RSA 631:2, III. The trial court declined to do so.

In *Bailey,* we held that the trial court did not err in declining to read verbatim the comments from the 1969 Report regarding the

second degree assault statute. "Taken out of context, the language of the 1969 [R]eport could easily have been taken to require proof that the acts of assault as charged in the indictment could, without more, have caused death. As we have seen, this is not the law." *Bailey*, 127 N.H. at 424, 503 A.2d at 769; *cf. State v. Dominguez*, 128 N.H. 288, 512 A.2d 1112 (1986).

"The purpose of the trial court's charge is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case." *Fletcher v. Kunze*, 125 N.H. 277, 279, 480 A.2d 141, 142 (1984). The trial court has no obligation to employ specific language requested by a party so long as the court otherwise adequately states the law. *State v. Sands*, 123 N.H. 570, 613, 467 A.2d 202, 230 (1983). In reviewing disputed jury instructions, we will determine their propriety by considering them in their entirety. *State v. Bird*, 122 N.H. 10, 15, 440 A.2d 441, 443 (1982). Reversal is not warranted unless the charge, as a whole, does not fairly cover the issues of law of the case. *Id.* We hold that the trial court's jury instructions in this case adequately presented the issues of law. *See Bailey*, 127 N.H. at 424, 503 A.2d at 768–69.

*Affirmed.*

All concurred.