Hillsborough
No. 89-430

THE STATE OF NEW HAMPSHIRE

v.

PAUL PLANTE, JR.

July 24, 1991

*John P. Arnold,* attorney general (*David S. Peck,* senior assistant attorney general, on the brief and orally), for the State.

*W. Kirk Abbott, Jr.,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J. The defendant appeals from his conviction of the kidnapping and aggravated felonious sexual assault of one victim, and the attempted kidnapping of another victim, on the basis of one issue: whether the Trial Court (*Groff,* J.) erred in refusing to give the defendant's requested instruction on insanity and thereby deprived the defendant of a fair trial. We affirm.

The relevant facts are as follows. On the morning of October 7, 1987, the defendant exited his vehicle, approached a seventeen-year-old girl who was walking to school in Milford and asked her if she could provide directions out of town. After receiving the directions, the defendant returned to his vehicle and followed the girl as she continued to walk to school. Eventually, the defendant stopped the girl again and forced her into his vehicle at knife-point. He then drove to the Milford Drive-in Theatre, parked and, while continuing to threaten the victim with the knife, sexually assaulted her. After the assault, the defendant asked the victim whether he should let her live, but he eventually drove the victim to school and dropped her off. Once inside the school, the victim reported the incident to school authorities who called the police.

On the morning of January 29, 1988, the defendant's second victim was walking to school in Hillsborough, when the defendant stopped his car and asked if she could direct him to Waltham Street. When she replied that she had never heard of the road, the defendant got out of his car, brandishing a knife, and told her to get in the car. The victim immediately ran to a nearby home, where a neighbor brought her into the house and called the police.

On February 10, 1988, two State Police officers interviewed the defendant regarding the two incidents described above. After properly informing the defendant of his rights, and upon obtaining a valid waiver of those rights, the officers asked the defendant a number of questions which prompted him to admit to attempting to force the second victim into his car on January 29th, with the intention of having sex with her. The defendant also told the police that since November of 1987, when he was in an automobile accident, he had been

having problems relating to women his own age, and that he felt more comfortable dealing with younger girls. On March 15, 1988, the defendant was indicted on one count of aggravated felonious assault, one count of kidnapping and one count of attempted kidnapping. The defendant entered a plea of not guilty by reason of insanity.

At trial, it was established that the defendant had been in an automobile accident in November of 1986, rather than November of 1987. As a result of this accident, the defendant was in a coma for three weeks and suffered contusions to the frontal lobes and occipital region of his brain. After the accident, the defendant underwent months of rehabilitation and therapy, which eventually enabled him to regain his basic speech, motor and cognitive skills. However, several people who knew the defendant well testified that they perceived a change in his personality after the accident. According to the defendant's sister, the defendant had not exhibited any aggressive tendencies toward women or young girls prior to the accident, and the defendant's former girlfriend noted that he began to physically abuse her only after the accident.

Before the trial, the defendant was examined by a number of physicians and psychiatrists in response to his contention that he suffered from a serious mental condition as a result of the 1986 automobile accident, which rendered him insane. The weight of the expert testimony presented to the jury concentrated on the issue of whether the defendant suffered from "organic personality syndrome," an organic brain disorder that influences a person's behavior and demeanor. Both the defense and the State called several expert witnesses who testified as to how his brain injury affected the defendant's behavior. Although these witnesses could not agree on how the defendant's injury specifically affected him, experts for both parties concluded that it did not alter the defendant's ability to distinguish right from wrong, cause delusions or compel the defendant to commit the sexual assault itself. Moreover, experts for both the defense and the State testified that organic personality syndrome is not a mental illness as defined by the psychiatric community.

At the close of the evidence, the defendant requested a jury instruction which included the term "condition" wherever the terms "illness" or "disease" appear in the instruction. The defense also requested that the jury be instructed that it could consider the question of "whether the defendant was suffering from brain damage or injury" as evidence of insanity. The trial court refused to give the requested instruction and, over the defendant's objection, rendered the jury charge in accordance with the model instruction for the in-

sanity defense. *See* RSA 628:2, II (Supp. 1990); N.H. CRIMINAL JURY INSTRUCTIONS 3.07 (1985). The jury found the defendant sane and guilty on all three counts, and this appeal followed.

The defendant now asserts that the trial court denied him a fair trial because the refusal to include the additional terms he requested in the jury instructions removed a question of fact from the jury's consideration. Essentially, the defendant argues that the terms "mental condition" and "brain damage or injury" were essential to his insanity defense, and the instruction without these terms was inadequate because it failed to alert the jury to the distinction between clinical and legal definitions of mental illness or disease. The defendant further maintains that the trial court abused its discretion in not including in the list of evidence on which the jury could rely in rendering its judgment evidence on the issue of whether the defendant suffered from brain damage or injury. We disagree.

■ ■ We note in passing that the defendant, in his brief, bases his argument on both the Federal and State Constitutions. However, the constitutional dimension of the defendant's argument was not called to the trial court's attention, nor was it raised in the notice of appeal. Therefore, we will consider his argument under an abuse of discretion standard, as these constitutional issues are not properly before this court under our long-standing rule regarding preservation of constitutional issues. *See State v. Dellorfano*, 128 N.H. 628, 632, 517 A.2d 1163, 1166 (1986). Where an alleged error involves a jury instruction, it is particularly appropriate that we follow this rule. *See State v. Wood*, 132 N.H. 162, 165, 562 A.2d 1312, 1314–15 (1989).

The disputed instructions provided in pertinent part:

"The defendant has raised the defense of insanity. Insanity is a affirmative defense. This means that the defendant has the burden of proving by clear and convincing evidence that he was insane at the time of the crime. The State does not have to prove that defendant was sane. The defense of insanity is essentially a claim that the defendant is not responsible for the act he committed. By raising a defense of insanity, the defendant says that he suffered from a mental illness or disease which made him not responsible for his action at the time he acted. There is no legal standard to determine whether or not the defendant suffered from an illness or disease which rendered him not responsible for his action at the time he acted. Whether or not any such illness

or disease exists is for you to decide. If such disease exists, whether or not the defendant suffered from one of them at the time he acted is for you to decide. There is no simple test to use in determining whether the defendant was insane at the time of the crime. Insanity is merely a question of fact to be decided by you based on all the evidence. The testimony of expert psychiatrists may be considered by you, but the testimony of lay people may be considered, as well, and the ultimate question of insanity is for you and not for psychiatric experts.

In deciding whether the defendant was insane, you may consider any evidence of insanity, including but not limited to whether the defendant was suffering from delusions or hallucinations, whether the defendant knew the difference between right and wrong, whether the defendant acted impulsively or acted with cunning and planning in executing the crime. You may consider other symptoms, such as whether the defendant could recognize friends or manage his own affairs. None of these, however, is a test for insanity, but you may consider all of these things and others. The basic question you must decide is whether this defendant should be held responsible for his acts as a criminal or whether he should be found not responsible as a criminal for his acts and treated as a person suffering from a mental illness or disease."

■■ "The scope and wording of jury instructions is generally within the sound discretion of the trial court," *State v. Wood, supra* at 164, 562 A.2d at 1314, and any allegations of error will be evaluated by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case. *See State v. Prisby,* 131 N.H. 57, 59, 550 A.2d 89, 90 (1988). "A requested charge on a party's theory of defense must be given if such theory is supported by some evidence," *State v. Guaraldi,* 124 N.H. 93, 97, 467 A.2d 233, 235 (1983) (quoting *State v. Aubert,* 120 N.H. 634, 635, 421 A.2d 124, 125 (1980)), but reversal of a jury verdict is unwarranted when a jury charge "fairly covers the issues and law of a case," *State v. Bird,* 122 N.H. 10, 15, 440 A.2d 441, 443 (1982).

■ The New Hampshire rule on insanity evolved out of Justice Doe's dissent in *Boardman v. Woodman,* 47 N.H. 120, 140–50 (1866). The position expressed in that dissenting opinion was subsequently

adopted by a majority of the court in *State v. Jones*, 50 N.H. 369 (1871), where it was held that "[w]hether the defendant has a mental disease . . . [was] as much a question of fact as whether he had a bodily disease; and whether the killing of his wife was the product of that disease, was also as clearly a matter of fact." *Id.* at 398. Since *Jones*, the common law in New Hampshire has treated the issue of a defendant's mental capacity, and the question of whether his or her acts are a product of mental illness or disease, as questions of fact to be determined by the jury. *See State v. Abbott*, 127 N.H. 444, 448, 503 A.2d 791, 794 (1985). There is no specific test or criterion which determines the issue of mental illness. *Id.* (citing *State v. Sadvari*, 123 N.H. 410, 414, 462 A.2d 102, 104 (1983)). Rather, any test which measures the capacity of the defendant is a matter of evidence, which falls within the province of the jury to be considered like any other factual issue. *See State v. Novosel*, 120 N.H. 176, 185, 412 A.2d 739, 746 (1980).

Upon our review of the record, and in light of the above discussion, it is clear that the trial court's instruction did not remove the issue of the defendant's mental capacity from the jury. The record illustrates that the issue of the defendant's condition was continually before the jury throughout the course of the trial. Experts for both the defense and the State testified as to the symptoms and disabilities associated with organic brain disorders. Lay witnesses testified as to the apparent change in the defendant's personality after he recovered from the automobile accident. The weight of the testimony which focused on the defendant's alleged disability, and the course of the trial itself, strongly suggest that the defendant's malady weighed heavily upon the jury's consideration of whether he suffered from a mental illness or disease.

The defendant argues in his brief that his requested instruction was necessary in light of the expert testimony which excluded organic personality syndrome from the clinical definition of mental illness. Nevertheless, the jury heard testimony from two expert witnesses who distinguished the clinical definition of insanity from the legal definition. Moreover, the trial court specifically instructed the jury to "consider any evidence of insanity" and that "the ultimate question of insanity is for you [to decide] and not for psychiatric experts." The jury was also instructed that it was not bound by the opinion of an expert, and that an expert's opinion could be ignored if the jury found that the opinion was not supported by sound reasons or outweighed by other evidence. Therefore, when we assess the instructions in their entirety, as we must, we find that the trial court

adequately informed the jury of the expert's proper role in aiding in the determination of a defendant's sanity. *See State v. Saucier*, 128 N.H. 291, 299, 512 A.2d 1120, 1126 (1986).

 Finally, the defendant argues that the trial court should have included evidence on the question of "whether the defendant was suffering from brain damage or injury" in the list of evidence upon which the jury could rely in making its determination. The defendant fails, however, to recognize that the jury was explicitly told that the list of evidence upon which it could rely was nonexhaustive, and that it could also consider *any* evidence of insanity, whether or not the trial judge specifically mentioned it in his instruction. The trial court also made it clear that there was no specific test for insanity. We find that a reasonable juror would have interpreted this instruction as permitting the consideration of any evidence admitted on the issue of the defendant's sanity. Therefore, we hold that the jury instruction given by the court fairly covered the issues and the law in this case, and that the trial court did not abuse its discretion in refusing to give the defendant's requested instruction.

Accordingly, we affirm.

*Affirmed.*

All concurred.