Grafton
No. 92-251

THE STATE OF NEW HAMPSHIRE

v.

DOUGLAS WRIGHT

August 25, 1993

*Jeffrey R. Howard*, attorney general (*Cynthia L. White*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

PER CURIAM. The defendant, Douglas Wright, appeals his conviction of first degree assault. *See* RSA 631:1 (Supp. 1992). He argues that the Superior Court (*Morrill*, J.) erred in providing the jury written instructions for its use during deliberations that contained part, but not all, of the court's oral charge. We affirm.

At trial, the State sought to prove that Wright shot Earl Wells while Wells and a friend, George Leno, were visiting Wright at his apartment. The bullet, the State contended, grazed Wells' shoulder and lodged in a door frame behind him. Both Wells and Leno testified for the prosecution, and although their stories conflicted in several respects, each stated that Wright, after consuming large quantities of alcohol, fired a gun at Wells. Wright testified in his own defense, acknowledging that he had drunk half a bottle of whiskey on the night in question, but denying shooting Wells or even seeing him that evening. He suggested that Wells and Leno "set [him] up." Police officers testified that they discovered a hole in a door frame of Wright's apartment consistent with Wells' description of the shooting. They failed to locate a bullet, but found what appeared to be a recently fired .45 caliber spent shell casing and a freshly cleaned and oiled .45 caliber gun. Wright owned the gun, which was identified by Wells and Leno as the assault weapon.

In his closing argument, Wright's attorney stressed the circumstantial evidence favoring the defense and detailed the inconsistencies between Wells' and Leno's testimony. Moreover, he highlighted the law regarding intoxication, implying that if Wright did shoot Wells, he was too drunk at the time to form the mental state necessary to prove first degree assault. The prosecutor also focused on the intoxication issue, arguing in closing that Wright was sufficiently sober to warrant a first degree assault conviction, but asking the jury to convict Wright of second degree assault if it found that his inebriation negated the requisite intent for the more serious offense.

The trial court initially delivered its jury charge orally. It included the standard instructions on the presumption of innocence, the State's burden of proof, the definition of "reasonable doubt," the credibility of witnesses, direct and circumstantial evidence, intoxication, and the elements of first and second degree assault.

The trial court then stated:

> "Let me just briefly state that I have typed up for you partial jury instructions defining first degree assault and the lesser included offense of second degree assault, which I'm going to allow you to have in the jury deliberation room,

each of you to have a copy in the jury deliberation room, so you can follow the definitions of the crime of first degree assault, which is charged, and the definition of the lesser included offense of second degree assault. Just a couple of points on this. As a matter of law, and as a matter of practicality, *all my instructions are equally important. For example, my instructions on reasonable doubt and the credibility of witnesses are as important as the definition of the crime charged. So I don't want you, just because you have a piece of paper in your hand that defines the crime, to disregard the burden of proof or the credibility of witnesses, which I have given to you orally.*"

(Emphasis added.) Wright's attorney objected as follows:

"Your honor, I object to the jury receiving copies of the written partial instructions for first degree assault and the lesser included, second degree assault, because even though the Court did orally instruct the jury that they are not to assign this any greater weight than the oral instructions, I do believe that this will cause them to focus primarily on this particular written instruction. I think, most importantly, I'm concerned that the jury should be giving equal weight with the instruction on direct and circumstantial evidence. That, we believe has as great an impact as this — as the partial jury instructions concerning the offense itself."

The court overruled the general objection to the partial written instructions, but agreed to provide the jury written instructions, for its use during deliberations, on direct and circumstantial evidence. The jury returned a guilty verdict on the charge of first degree assault, and this appeal followed.

█ Although this court has never addressed the propriety of partial written jury instructions, the general law regarding our review of a trial court's charge is well-settled.

"The scope and wording of jury instructions is generally within the sound discretion of the trial court, and any allegations of error will be evaluated by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case. . . . [R]eversal of a jury verdict is unwarranted when a jury charge fairly covers the issues and law of a case."

*State v. Plante,* 134 N.H. 456, 460, 594 A.2d 1279, 1282–83 (1991) (quotations and citations omitted); *see also State v. King,* 136 N.H.

674, 677, 621 A.2d 921, 923 (1993). In the context of a case such as this, the question whether "a jury charge fairly covers the issues and law of a case" is better stated as whether the partial written instructions "created an unbalanced impression of the law to the jury that was prejudicial to the [defendant]." *United States v. Acosta*, 763 F.2d 671, 678 (5th Cir.), *cert. denied*, 474 U.S. 863 (1985). After reviewing the court's charge as a whole and all the evidence, we conclude that the partial written instructions did not create "an unbalanced impression of the law" and did not prejudice the defendant.

As Wright points out, the potential danger of partial written jury instructions, "particularly in the absence of any request from the jury for further instruction . . . [, is] that the jury will perceive the writing as embodying the more important instructions, inviting greater attention to the principles that are repeated in writing than those simply recited orally." *People v. Owens*, 69 N.Y.2d 585, 591, 509 N.E.2d 314, 317, 516 N.Y.S.2d 619, 622 (1987). Wright also argues against the effectiveness of any remonstrances by the trial court to treat oral and written instructions alike. *But see State v. Smart*, 136 N.H. 639, 650, 622 A.2d 1197, 1204 (1993) (our system of justice premised on belief that jurors follow court's instructions). Such warnings, Wright maintains, merely serve to send the jury

> "two conflicting messages . . . [,] one as the court states the cautionary instruction and the other as it gives the jury written instructions on only the elements and definition. If the elements and definition are no more important than the other instructions then why bother to give written instructions on only that portion? The cautionary instruction given may mitigate the prejudice. It does not eliminate it."

*State v. McCloud*, 349 N.W.2d 590, 593 (Minn. Ct. App. 1984).

■■ The State contends that written instructions may promote jury efficiency by saving time otherwise spent in recollection of and debate over what the instructions actually were. We incline toward the view that such instructions should be given in their entirety. We decline, however, to adopt a *per se* rule forbidding the use of partial written instructions where, in rare instances, they may help clarify the more complicated portions of a court's jury charge. We recognize the potential for prejudice inherent in any charge in which some oral instructions are repeated to the jury in written form, while others are not. *See McCloud*, 349 N.W.2d at 593; *Owens*, 69 N.Y.2d at 591, 509 N.E.2d at 317, 516 N.Y.S.2d at 622. Accordingly, we discourage

such practice. In the future, when the trial court determines that partial written instructions are necessary, the court must state its reasons therefor on the record. A failure to do so will make it more difficult for us to hold that the trial court did not abuse its discretion.

The remaining issue is whether the trial court abused its discretion by giving the jury partial written instructions. We hold that it did not. As Wright states in his brief, "The principal issue at trial was whether the defendant was so intoxicated that he lacked the intent alleged in the indictment." The court's written instructions included a detailed explanation of the relation between intoxication and the State's burden of proving the requisite mental state for each of the crimes alleged. Thus, the instructions could not have resulted in any prejudice to Wright on that issue. Similarly, after Wright requested a written instruction on direct and circumstantial evidence, the trial court provided one. The only other instructions Wright now contends should have been included in the writing given to the jury are those relating to the presumption of innocence, the State's burden of proof, and the definition of "reasonable doubt." Wright, however, never specifically requested the court to include them in the written instructions. *See Acosta*, 763 F.2d at 678. Finally, Wright cites no evidence that the jury ignored the court's admonishments to treat all of its instructions alike, *see Smart*, 136 N.H. at 650, 622 A.2d at 1204, or that he was, in fact, prejudiced by the manner in which the court delivered its instructions. Finding no prejudice, we affirm.

*Affirmed.*