Rockingham
No. 92-663

## THE STATE OF NEW HAMPSHIRE

v.

## CRAIG A. CEGELIS

March 3, 1994

*Jeffrey R. Howard*, attorney general (*Amy Vorenberg*, assistant attorney general, on the brief and orally), for the State.

*Judith M. Kasper*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J.   The defendant, Craig Cegelis, was convicted in the Superior Court (*Brennan*, J.) of four counts of aggravated felonious sexual assault, RSA 632-A:2, III (1986 & Supp. 1992) (current version at RSA 632-A:2, I(c) (Supp. 1993)), and one count of false imprisonment, RSA 633:3 (1986), after a non-bifurcated jury trial, in which he raised an insanity defense. On appeal, the defendant contends that the trial court (1) erroneously instructed the jury concerning his insanity defense, and (2) erred by failing to instruct the

jury concerning intoxication as part of the insanity defense. We affirm.

The defendant's convictions stemmed from his assault of a female neighbor at her home on November 3, 1991. At trial, he argued: (1) that the State failed to prove beyond a reasonable doubt the facts alleged in the indictments; (2) that he was in an alcoholic blackout state, rendering him incapable of the requisite mental state for the alleged criminal acts; or (3) that he was insane and not criminally responsible for his actions.

The defendant objected to the proposed insanity defense jury instruction on the ground that it erroneously required a "two-prong test" for insanity, *i.e.*, that the defendant "was mentally ill when he committed the alleged acts and those [acts] were the products of his mental disease." The defendant argued that the correct "New Hampshire doctrine" required the jury to decide "if it was, in fact, insanity and if it was, in fact, what led or caused to a substantial degree the defendant to commit these acts." Essentially, the defendant argued that the jury should first decide the factual question of insanity based upon all the evidence. If the jury found him insane, it would then determine whether the insanity caused him to commit the acts. If so, a verdict of not guilty by reason of insanity would be appropriate as the defendant was not criminally responsible for his acts.

On appeal, as at trial, the defendant contends that the instruction was inaccurate "because it couched the issue of insanity in terms of a cause and effect relationship between mental disease/defect and the defendant's actions." He argues that the instruction should have explained that the "insanity defense" meant "the defendant suffered from a mental illness or disease which made him not responsible for his actions."

The State contends that the defendant did not properly preserve the issue for appeal as "he never raised the grounds now being asserted on appeal." We disagree. It is true that the instruction requested by the defendant at trial differs somewhat from that which he suggests was appropriate on appeal. His objections to the trial court's insanity defense instruction, however, both at trial and on appeal, are identical. Accordingly, the issue was properly preserved.

Our standard of review for determining whether a trial court's instruction is proper is as follows:

"The scope and wording of jury instructions is generally within the sound discretion of the trial court, and any allega-

tions of error will be evaluated by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case. . . . [R]eversal of a jury verdict is unwarranted when a jury charge fairly covers the issues and law of a case."

*State v. Plante*, 134 N.H. 456, 460, 594 A.2d 1279, 1282–83 (1991) (citations and quotations omitted). The disputed insanity instruction reads in pertinent part:

"[T]he defendant must convince you it is highly probable that he was mentally ill when he committed the alleged acts and that those acts were the product of his mental illness.

A person who is insane at the time that he commits an unlawful act is not criminally responsible if the disease caused his actions. A defendant who asserts the defense of insanity claims that at the time he acted, he was suffering from a mental disease or defect which caused his actions and made him not responsible for those acts.

It is up to you, the jury, to determine as a question of fact whether the defendant suffered from a mental disease or defect that caused him to act as charged. There is no legal definition of what constitutes a mental disease or defect. If at the time of the offense the defendant suffered from a mental disease or defect that caused him to commit the offense, then he is not criminally responsible for the act.

. . .

. . . Whether the defendant had a mental disease or defect and whether the crime was a product of such disease or defect are questions of fact for the jury."

■ The purpose of a trial court's instruction is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case. *State v. Saucier*, 128 N.H. 291, 299, 512 A.2d 1120, 1126 (1986). The insanity instruction given by the trial judge did just that. His use of the words "product of" and "cause" mirrored the terminology that has been used and approved repeatedly to state and explain the insanity defense. *See, e.g., Plante*, 134 N.H. at 461, 594 A.2d at 1283 ("whether [the] acts are a product of mental illness or disease"); *State v. Shackford*, 127 N.H. 695, 701, 506 A.2d 315, 318 (1986) ("whether the act was the offspring of insanity: if it was, a criminal intent did not produce it"); *State v. Abbott*, 127 N.H. 444, 448–49, 503 A.2d 791, 794 (1985) ("whether an individual had a

mental disease, and whether an act was the product of that disease"); *State v. Sadvari*, 123 N.H. 410, 414, 462 A.2d 102, 104 (1983) ("whether the crimes were the product of that mental disease or defect"); *State v. Plummer*, 117 N.H. 320, 327, 374 A.2d 431, 435 (1977) ("defendant's actions are the product of such a disease"); *State v. Jones*, 50 N.H. 369, 399 (1871) ("If the defendant had an insane impulse to kill . . . , which he could not control, then mental disease produced the act. If he could have controlled it, then his will must have assented to the act, and it was not caused by disease . . . .").

The trial court used the words "product of" in both the opening and concluding paragraphs of its insanity defense instruction. The word "caused" appears in the intervening paragraphs. "Product of" implies a causal relationship between a defendant's mental illness and the criminal acts. Absent this causal relationship, a jury could reasonably find that a defendant suffered from a mental illness but remained criminally responsible for a particular act. *See Abbott*, 127 N.H. at 448, 503 A.2d at 794. The existence of this causal relationship is essential to a finding of not guilty by reason of insanity. *Cf. Jones*, 50 N.H. at 372 (affirming trial court's refusal to give a jury instruction stating: "Any degree of insanity . . . makes [the defendant] also incapable of crime and not responsible, though the jury may be unable to trace any connection between the partial insanity and the act complained of.").

The defendant's argument that the trial court's use of the words "product of" and "caused" impermissibly couched the question of insanity in terms of a causal relationship is disingenuous. The record reflects his own understanding of the need to show this causal relationship between his mental illness and his criminal conduct for a successful insanity defense. For example, in his opening statement, the defendant's counsel stated:

> "Now, the defense of insanity in New Hampshire is unique in all of the United States. What we have to do is convince you to what they call a clear and convincing standard of proof that [the defendant] was suffering from a mental illness at the time these acts took place and that that mental illness caused him to do what he did."

■ We find no abuse of discretion in the trial court's insanity defense instruction. The trial court's use of the words "product of" and "caused" explained to the jury, through clear and intelligible language, the applicable rules of law in this case. A reasonable jury would have understood the need to find a causal relationship between

the defendant's mental illness and his criminal acts before it could find him not guilty by reason of insanity.

The defendant next argues that the trial court erred by failing to instruct the jury on "intoxication as part of the insanity defense." The trial court instead gave an instruction on intoxication and followed it with the insanity defense instruction.

■    Whether or not a particular jury instruction is necessary to assist the jury in reaching a verdict is within the sound discretion of the trial court. *See State v. Dedrick*, 135 N.H. 502, 505, 607 A.2d 127, 129 (1992).

■    The defendant first argues that the trial court's refusal to give the requested instruction is reversible error because "the defense had presented extensive evidence . . . to support its theory of insanity as intricately related to the defendant's history of chronic alcohol abuse." We disagree. A requested charge on a party's theory of defense must be given if such theory is supported by some evidence. *Plante*, 134 N.H. at 460, 594 A.2d at 1282. The defendant introduced evidence of alcoholism in support of his theory of defense that he was not guilty by reason of insanity. The trial court instructed the jury that it should consider "any" and "all" evidence in deciding the question of insanity. This language was not exclusive; it directed the jury to consider all evidence, which included evidence of alcoholism and intoxication, on the factual question of insanity. *Cf. id.* at 462, 594 A.2d at 1283–84. The defendant introduced evidence of intoxication in support of his alternative theory of defense that intoxication prevented him from having the requisite intent to commit the alleged criminal acts. The trial court properly instructed the jury that evidence of intoxication could be considered in deciding whether the defendant had the requisite intent, but that being intoxicated is not a defense. Consequently, the jury was properly charged on the defendant's two theories of defense, *i.e.*, that he was insane at the time of the crimes, or that he did not have the requisite intent to commit the criminal acts.

The defendant finally argues that the absence of a specific instruction concerning "intoxication as part of the insanity defense," in light of the instructions given concerning intoxication and insanity, necessarily left the jury "with the impression that evidence of alcohol use could not also be applied to the insanity defense. In this way, the court's [intoxication] instruction erroneously removed the issue of the defendant's mental capacity from the jury." We disagree.

The intoxication instruction reads, in pertinent part:

"Evidence has been presented that the defendant was intoxicated at the time of the alleged crimes. Being intoxicated is not, as such, a defense. However, you may consider the evidence of intoxication in deciding whether the State has proven the defendant acted [with the necessary level of intent]."

The instruction clearly advised the jury that intoxication, by itself, was not a defense. Nothing in the instruction, however, indicated that evidence of intoxication could not be considered by the jury to decide the question of insanity. The instruction's second and third sentences differentiated for the jury the dual nature of the evidence of intoxication. While that evidence did not constitute a defense, it could be considered in regard to the mental state of the defendant.

■    The insanity defense instruction reads, in pertinent part:

"In deciding whether the defendant is insane, you may consider any evidence of insanity. You may consider, for example, whether the defendant knew the difference between right and wrong and whether the defendant acted impulsively or acted with cunning and planning in executing the crime and escaping or avoiding detection. You may consider, for example, whether the defendant could recognize acquaintances and whether he could labor or transact business affairs. Also, you may consider whether the defendant was suffering from delusions or hallucinations. You may consider the experts' testimony about the defendant's mental condition. None of these things, however, is a test for insanity, but you may consider all of these things.

All symptoms and all tests of mental disease or defect are purely matters of fact to be determined by the jury. . . . Consider all the evidence in deciding the question of insanity, including the testimony of lay persons, testimony of expert witnesses and exhibits.

Remember, no particular type of evidence should be presumed superior to other types of evidence or immune to your scrutiny. Thus, the testimony of experts may be considered by you, but the testimony of lay persons may be considered as well and the ultimate question of insanity is for you to decide, not the experts."

The instruction advised the jury that it could consider any and all evidence in deciding the factual question of insanity. This included any evidence of intoxication and chronic alcohol abuse. The jury was

told that all testimony, both lay and expert, and exhibits could be considered and that there was no specific test for insanity. By use of the terms "for example," "any," and "all," the instruction indicated that the evidentiary items that were listed were merely examples of what could be considered. We find that a reasonable juror would not have interpreted the intoxication instruction as a limitation on the jury's consideration of any and all evidence on the question of insanity. *See Plante*, 134 N.H. at 462, 594 A.2d at 1283–84.

Considering the language of the instructions in their entirety, we find that the jury charge fairly covered the issues and law of this case.

*Affirmed.*

All concurred.