#26910-a-JKK

**2014 S.D. 98**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

SAMUEL D. MILAND,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOSEPH NEILES
Judge

* * * *

MARTY J. JACKLEY
Attorney General

ELLIE J. BAILEY
JOHN M. STROHMAN
Assistant Attorneys General
Pierre, South Dakota                    Attorneys for plaintiff
                                            and appellee.

CYNTHIA M. BERREAU
Canton, South Dakota                    Attorney for defendant
                                            and appellant.

* * * *

ARGUED OCTOBER 6, 2014

OPINION FILED **12/30/14**

#26910

KONENKAMP, Justice

[¶1.]      Samuel Douglas Miland attacked a law enforcement officer while sitting in the officer's patrol car. After a bench trial, he was found guilty of aggravated assault. On appeal, he asserts insufficient evidence to support proof that the officer sustained serious bodily injury and that the injury occurred under circumstances manifesting extreme indifference to the value of human life.

## Background

[¶2.]      On the evening of October 17, 2012, Deputy Chief of Police for Canton, South Dakota, David Jacobs, was dispatched to a local convenience store. A clerk had called to report her nervousness about two men "acting strange" at the store. When their vehicle left the store, Officer Jacobs followed. He observed a brake light out and initiated a traffic stop at 11:40 p.m. On approaching the car, the officer detected the odor of an alcoholic beverage coming from the vehicle. He asked the driver, Miland, to join him in the patrol car. Once in the patrol car, Officer Jacobs asked Miland about his travel plans, whether he knew his brake light was out, and whether he had been drinking. Miland said he and his passenger were on their way to an ex-girlfriend's home; he acknowledged his light was out and had plans to fix it. He denied any drinking, and a later breath test confirmed his claim. Officer Jacobs had Miland stand in front of the patrol car so Officer Jacobs could speak with the passenger. According to Officer Jacobs, the passenger relayed plans inconsistent with what Miland had said. And Miland had given the officer a different last name for the passenger, whose true name was Blevins. When Officer Jacobs saw a

handgun magazine on the dashboard, he returned to his patrol car and called for extra officers.

[¶3.]     Deputy Sheriffs Kolshan and Schurch responded to the call. Miland gave these officers permission to search his vehicle. While they searched, Miland and Officer Jacobs waited in the patrol car. With the patrol car's video and audio recording, the two can be heard calmly engaging in general conversation. As they were conversing, Miland told Officer Jacobs that the officers should "get that trunk nice and searched." He then opened the passenger-side door and yelled a similar comment to Deputy Schurch and then closed the door. Miland then asked Officer Jacobs whether he liked his job. Officer Jacobs responded that he did.

[¶4.]     Suddenly, without warning, Miland punched the officer squarely between the eyes and nose. As Officer Jacobs would later testify, "At that point, I was seeing stars, and he continued to beat me on my face as fast as he could and as hard as he could for I don't even know how long." Officer Jacobs tried unsuccessfully to push him off; he grabbed Miland's neck in an effort to repulse him. Miland was up on the passenger seat and, according to Officer Jacobs, Miland "was trying to get around to [the officer's] throat."

[¶5.]     To gain the other officers' attention, Officer Jacobs honked his horn and jammed the accelerator with his foot. Deputy Schurch ran to the passenger-side door. It was locked. While yelling for help to Deputy Kolshan, Deputy Schurch opened the driver's-side door and reached for Miland, but Miland moved to the other side while continuing to punch Officer Jacobs. Using his baton, Deputy Kolshan then shattered the passenger-side window. He struck Miland twice with the baton

to stop the attack, but Miland would not relent. Deputy Kolshan dragged him out of the vehicle, even as Miland continued to punch and kick at Officer Jacobs. Miland then grabbed Deputy Kolshan's baton, and a struggle ensued with both men on the ground.

[¶6.] At that moment, Officer Jacobs was "in a complete daze." He would later explain, "My whole head hurt. I had blood running in my mouth, eyes watering. I wasn't really quite sure where I was." He managed nonetheless to get around his car to help place Miland in handcuffs. Then he "stood back and tried to get some sort of sense of time." Deputy Kolshan told Officer Jacobs to sit down on the ground because his face was dripping blood and he appeared disoriented and unstable on his feet. Miland's later urinalysis proved positive for methamphetamine. Judging from the patrol car's video recording, the attack inside the car lasted less than a minute.

[¶7.] Officer Jacobs and Miland were taken by ambulance to separate hospitals, where they were treated and discharged. Miland was thereafter placed in jail. The following day, Officer Jacobs visited his personal physician, who took x-rays to determine the extent of his injuries. The x-rays revealed no fractures, and his physician thought he would have a full recovery. At Miland's trial, Officer Jacobs testified that eight months after the attack he still had "difficulty breathing through the left side of [his] nose, [had] reduced airflow, and still suffer[ed] from flashbacks, nightmares." His nose was crooked, requiring plastic surgery to straighten it. He also experienced insomnia, anxiety, and depression.

[¶8.]    Miland was charged with: possession of a controlled substance in violation of SDCL 22-42-5, aggravated assault against a law enforcement officer in violation of SDCL 22-18-1.1(1) and SDCL 22-18-1.05 (or in the alternative, SDCL 22-18-1.1(4) and SDCL 22-18-1.05), and resisting arrest in violation of SDCL 22-11-4(1).  He was also charged as a habitual offender.  He pleaded not guilty to all counts and requested a bench trial.  Several witnesses testified at trial, including Officer Jacobs's treating physician.  The court also viewed the video recording from the patrol vehicle and the photos of Officer Jacobs's injuries.

[¶9.]    At the close of the State's case, Miland moved for a judgment of acquittal on the ground that the State failed to meet its burden of proving aggravated assault under SDCL 22-18-1.1(1).  The court denied the motion and found Miland guilty of possession of a controlled substance, resisting arrest, and aggravated assault.

[¶10.]    As charged in Count II of the indictment, an aggravated assault is committed when one "[a]ttempts to cause serious bodily injury to another, or causes such injury, under circumstances manifesting extreme indifference to the value of human life[.]"  *Id.*  In finding Miland guilty of aggravated assault, the court noted that Officer Jacobs was engaged in the performance of his duties as a law enforcement officer (SDCL 22-18-1.05), that "the injury . . . suffered in this case was serious bodily injury," and that the assault occurred "under circumstances manifesting extreme indifference to the value of human life."  Miland admitted to the Part II Information for Habitual Criminal as defined in SDCL 22-7-8.  For the

aggravated assault, he was sentenced to forty years in prison. On appeal, the only matter at issue is the conviction for aggravated assault.

## Analysis and Decision

[¶11.] We review de novo a trial court's denial of a motion for a judgment of acquittal and decide anew whether there is sufficient evidence in the record to sustain the conviction. *State v. Scott*, 2010 S.D. 66, ¶ 6 n.2, 787 N.W.2d 1, 2 n.2; *see also State v. Jucht*, 2012 S.D. 66, ¶ 18, 821 N.W.2d 629, 633. In making our review, "we ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Brim*, 2010 S.D. 74, ¶ 6, 789 N.W.2d 80, 83 (quoting *State v. Klaudt*, 2009 S.D. 71, ¶ 14, 772 N.W.2d 117, 122) (internal quotation mark omitted).

[¶12.] Serious bodily injury is defined in SDCL 22-1-2(44A) as "such injury as is grave and not trivial, and gives rise to apprehension of danger to life, health, or limb." *See also State v. Janisch*, 290 N.W.2d 473, 476 (S.D. 1980). In *State v. Bogenreif*, 465 N.W.2d 777 (S.D. 1991) and *State v. Fasthorse* (*Fast Horse*), 2009 S.D. 106, 776 N.W.2d 233, the injuries suffered by the victims were, like here, inflicted by the assailants' fists. In *Bogenreif*, it was undisputed that the victim was in apprehension of danger to life, health, or limb, and, therefore, we were asked to decide whether the loss of teeth, nerve damage, and a severe cut to the lip with a permanent scar and altered bite constituted a "grave" injury. 465 N.W.2d at 780-81. After recognizing differing views from other jurisdictions, we upheld the conviction in *Bogenreif* because the victim's injuries were sufficient to support the

jury's verdict. *Id.* at 781. Then in *Fast Horse*, although the victim sustained only scratches and abrasions, we upheld Fast Horse's conviction because he *attempted* to cause serious bodily injury when he threatened to shoot and kill the victim, punched and choked her, and tripped her and dragged her to his vehicle. 2009 S.D. 106, ¶ 11, 776 N.W.2d at 237.

[¶13.] Miland argues that his actions neither caused Officer Jacobs serious bodily injury nor occurred under circumstances manifesting extreme indifference to the value of human life. On his point that his actions did not cause serious bodily injury, Miland emphasizes the physician testimony that Officer Jacobs sustained only "some bruising, some abrasion on his forehead, some stiffness in his neck and shoulder, and some swelling on his nasal passage." Thus, Miland contends that these injuries "as a matter of law" do not amount to serious bodily injury: they were not grave and presented no danger to Officer Jacobs's life, health, or limb.

[¶14.] We need not decide whether the evidence established serious bodily injury to Officer Jacobs. The statute is phrased in the alternative, and if Miland did not cause serious bodily injury, the evidence supports the conclusion that he *attempted* to cause such injury. *See* SDCL 22-18-1.1(1). Officer Jacobs testified that Miland punched him squarely between the nose and eyes and continued to punch him repeatedly and violently, stopping only because he was pulled out of the patrol car. As the trial court noted, "any time we're talking about an injury to a person's head . . . a real blow to [the] head, I think legitimately there is a fear or an apprehension that that injury can be life long; that it can be something that will go with the victim of that injury for an extended period of time." Moreover, Miland

was attempting to get his arm around Officer Jacobs's neck. We cannot say the evidence is so insufficient that no rational trier of fact could have found that Miland *attempted* to inflict serious bodily injury. *See State v. Plenty Horse*, 2007 S.D. 114, ¶ 5, 741 N.W.2d 763, 765.

[¶15.] Miland next contends that the evidence was insufficient to support proof that the assault occurred under circumstances manifesting extreme indifference to the value of human life. We have not defined what circumstances are sufficient to manifest extreme indifference to the value of human life. In one case from 1980, this Court reversed a defendant's conviction for aggravated assault, concluding, without defining what evidence would be sufficient, that the defendant did not act under circumstances manifesting extreme indifference to the value of human life. *State v. Shear*, 295 N.W.2d 176, 178 (S.D. 1980). In that case, the defendant shoved his wife so hard that she fell and fractured a rib.

[¶16.] Miland relies on cases from other jurisdictions and the comments pertaining to the Model Penal Code. Our statute, however, is unique. The Model Penal Code and other state statutes define aggravated assault as an attempt to cause or a causing of serious bodily injury to another "*purposely, knowingly or recklessly* under circumstances manifesting extreme indifference to the value of human life[.]" Model Penal Code § 211.1(2)(a) (emphasis added); *see also* Miss. Code Ann. 97-3-7(2)(a); N.J.S.A. 2C:12-1b(1); 18 Pa. C.S.A. 2702(a)(1) (intentionally, knowingly or recklessly); 13 V.S.A. 1024(a)(1). In contrast, SDCL 22-18-1.1(1) contains no specific mental state. *See State v. Rash*, 294 N.W.2d 416, 418 (S.D.

1980). And we have declared that aggravated assault is not a specific intent crime. *Id.*

[¶17.] This leaves yet unanswered what constitutes circumstances manifesting extreme indifference to the value of human life. When asked to interpret this phrase, courts have focused on whether the facts demonstrate a disregard for the risk to the victim's life. As one court noted, "Giving the phrase its plain meaning," aggravated assault "must by necessity be more dire and formidable in terms of affecting human life." *Tigue v. State*, 889 S.W.2d 760, 761-62 (Ark. 1994) (interpreting language similar to SDCL 22-18-1.1). For some courts, this statutory language is designed to more severely punish an assault where the defendant's actions "would have justified a murder conviction had his victim not fortuitously lived." *O'Brien v. State*, 45 P.3d 225, 231 (Wyo. 2002) (citing Model Penal Code § 211.1(2)(a) cmt. 4). That does not mean, however, that "the particular assaults actually committed must be life threatening to support a finding that the defendant acted with extreme indifference to the value of human life." *State v. Saucier*, 512 A.2d 1120, 1125 (N.H. 1986). It is the circumstances of the crime that must manifest extreme indifference. *Id.*

[¶18.] Accordingly, by requiring evidence of "circumstances manifesting extreme indifference to the value of human life" our Legislature deemed significant the nature of the assaultive act or acts themselves. *See* SDCL 22-18-1.1(1). The severity of the resulting injuries and the accused's state of mind may be germane to the extreme indifference question, but the main focus is on the *conduct* of the accused. Therefore, under SDCL 22-18-1.1(1), if the accused's "conduct was of the

most threatening sort," such that the circumstances "demonstrate a blatant disregard for the risk to the victim's life," and the accused either attempted to or did cause serious bodily injury, that person is guilty of aggravated assault. *See Saucier*, 512 A.2d at 1125 (quoting New Hampshire's comments to report on its criminal code) (internal quotation marks omitted). *See also State v. Pigueiras*, 781 A.2d 1086, 1094-95 (N.J. Super. App. Div. 2001).

[¶19.]    Here, Officer Jacobs and Miland were both sitting in the front seat of the patrol car. Miland was not in custody or under arrest. The two were engaged in conversation. Without warning, Miland began punching Officer Jacobs in the face as hard as he could, as fast as he could. And he attempted to get his arm around the officer's neck. Blows from a deputy's baton did not deter him. Even as he was being dragged out of the car, Miland continued punching and kicking at Officer Jacobs. Viewing the video of this event, one is struck by the shock and brutality of Miland's onslaught.

[¶20.]    From our review of the evidence in a light most favorable to the verdict, the record establishes that Miland assaulted Officer Jacobs under circumstances manifesting extreme indifference to the value of human life. Had he not been interrupted, obviously he would have continued. In *State v. White Mountain*, 477 N.W.2d 36, 39 (S.D. 1991), we upheld an aggravated assault conviction where the defendant repeatedly kicked the victim in the head and stomach and stopped only when police arrived. That evidence was sufficient to support the jury's conclusion that the defendant attempted to cause serious bodily injury in circumstances demonstrating extreme indifference to the value of human

life. *Id.* As the trial court found here, Miland "didn't care about the consequences." Even accepting Miland's point that Officer Jacobs did not suffer severe injury, Miland's conduct — repeatedly and violently punching the officer in the face without ceasing until he was pulled away — was of the most threatening sort and demonstrated a blatant disregard for the risk to Officer Jacobs's life. Therefore, Miland's conviction under SDCL 22-18-1.1(1) can be sustained.

[¶21.]      Affirmed.

[¶22.]      GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.