#29004-r-SRJ
**2020 S.D. 15**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellant,

    v.

VINCENT WOLF,                             Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE NATALIE DAMGAARD
Judge

* * * *

JASON R. RAVNSBORG
Attorney General

MATTHEW W. TEMPLAR
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff and
                                          appellant.


CHRISTOPHER MILES of
Minnehaha County Public
   Defender's Office
Sioux Falls, South Dakota                 Attorneys for defendant and
                                          appellee.

* * * *

CONSIDERED ON BRIEFS
JANUARY 13, 2020
OPINION FILED **03/18/20**

#29004

JENSEN, Justice

[¶1.]        A jury convicted Vincent Shane Wolf of aggravated assault and simple assault for attacking a Department of Corrections (DOC) employee while Wolf was an inmate at the South Dakota State Penitentiary.  The circuit court denied Wolf's motion for judgment of acquittal on both charges at the close of the State's evidence.  However, Wolf filed a renewed motion for judgment of acquittal on the aggravated assault conviction after the trial, which the court granted.  The State appeals arguing that the circuit court erred in granting Wolf's motion for judgment of acquittal on the aggravated assault conviction.  We reverse and reinstate the aggravated assault conviction.

## Background

[¶2.]        On August 26, 2018, DOC Officer Darek Ekeren confiscated Wolf's tablet for a violation of the DOC rules.  Later, Wolf approached Officer Ekeren and told him, "[y]ou have five minutes to return my tablet."  In response, Officer Ekeren told Wolf to go lock up and left the area.

[¶3.]        Shortly thereafter, Wolf waited for Officer Ekeren at the entrance of the hallway area of a cellblock, referred to as Tier 2.  This was a location that Wolf was not authorized to be in.  Tier 2 had inmate cells along one side and a fenced railing with a metal grid on the other.  Wolf asked for his tablet back as Officer Ekeren approached.  Officer Ekeren refused to return it and told Wolf to walk away.  Wolf did not comply.  Instead, he charged at Officer Ekeren and the two began grappling.  Officer Ekeren fell to the floor during the initial encounter.  Officer Ekeren testified that while he remained on the floor, Wolf began to punch and knee

him in the face and head for about twenty seconds.  Officer Ekeren testified that Wolf punched him with a closed fist.

[¶4.]    During this attack, Officer Ekeren got onto one knee and grabbed onto mesh netting above the railing.  As he did this, Wolf put Officer Ekeren in a chokehold.  Officer Ekeren testified that Wolf wrapped his forearm around his neck and used his other arm as leverage to put more pressure on him.  Officer Ekeren testified that while in the chokehold, he was unable to breathe for a few seconds and thought to himself, "he has me locked in."  Using the chokehold, Wolf attempted to lift Officer Ekeren off the floor.  Officer Ekeren escaped the chokehold and separated himself from Wolf by pushing Wolf back against a cell door.  Officer Ekeren then called a "Code Red" and another officer arrived to assist.  Officer Ekeren sprayed Wolf with "OC spray" and the other officer handcuffed Wolf and placed him in a holding cell.  A video recording that was presented to the jury showed that the entire physical altercation may have lasted approximately thirty seconds.

[¶5.]    Officer Ekeren was escorted to the penitentiary's health services to be examined.  He was then referred to the Avera Emergency Room.  The treating physician observed that Officer Ekeren had a one-centimeter laceration under his left eye, redness in that same eye, and bruises on his face and eye.  Officer Ekeren received treatment for the laceration under his eye.  The next day, Officer Ekeren returned to the Avera Emergency Room because of knee pain. Officer Ekeren was diagnosed with a knee sprain and was placed in a knee immobilizer for four weeks.

[¶6.]        Following the altercation, Lieutenant Hunter Summers, a DOC Special Investigations Unit officer, interviewed Wolf. Wolf admitted that he hit Officer Ekeren in the head over twenty times and put him in a chokehold. Wolf told Lieutenant Summers that he tried to pick up Officer Ekeren and throw him, but Officer Ekeren was holding onto the bars on the grid. Wolf admitted that he wanted to hurt Officer Ekeren at the time of his attack. When Wolf was asked his intention in using a chokehold, he answered, "I don't know man. I just—I was just gone. I was just—just raged."

[¶7.]        On January 2, 2018, the Minnehaha County Grand Jury returned an indictment charging Wolf with Count 1: aggravated assault against a DOC employee (extreme indifference) in violation of SDCL 22-18-1.05 and SDCL 22-18-1.1(1); Count 2: aggravated assault against a DOC employee (serious bodily injury) in violation of SDCL 22-18-1.05 and SDCL 22-18-1.1(4); or in the alternative, Count 2A: simple assault against a DOC employee (intentionally causes bodily injury) in violation of SDCL 22-18-1.05 and SDCL 22-18-1(5); and Count 3: aggravated assault against a DOC employee (choking) in violation of SDCL 22-18-1.05 and SDCL 22-18-1.1(8).

[¶8.]        Wolf entered a plea of not guilty to the charges and the case proceeded to a jury trial. After the close of the State's case, Wolf moved for judgment of acquittal on all the charges. The circuit court granted the motion on Count 2 determining the State failed to present evidence that Officer Ekeren sustained serious bodily injury. The court denied the motion on the other counts, determining there was sufficient evidence to support the other charges. In denying the motion

on the aggravated assault charge in Count 1, the circuit court stated, "there is sufficient evidence to send to the jury that there is an attempt to cause serious bodily injury . . . under circumstances manifesting extreme indifference to the value human life."

[¶9.]	The jury found Wolf guilty of aggravated assault against a correctional officer (extreme indifference) in Count 1, and simple assault against a correctional officer in Count 2A, but acquitted Wolf of aggravated assault against a correctional officer (choking) in Count 3. After the verdict, Wolf again moved for judgment of acquittal on Count 1. He argued that the State presented insufficient evidence to prove that he acted under circumstances manifesting an extreme indifference to the value of human life based upon Wolf's conduct, the extent of Officer Ekeren's injuries, and the jury's acquittal of aggravated assault for choking. The circuit court granted Wolf's post-verdict motion and entered a judgment of acquittal on Count 1.

[¶10.]	Wolf was sentenced on May 15, 2019, on the conviction for simple assault against a correctional officer. Prior to sentencing, the State dismissed the part II information alleging a prior felony conviction and argued for the application of the doubling statute in SDCL 22-6-5.1.[1] The circuit court sentenced Wolf to four

---

1.	SDCL 22-6-5.1 provides that:

> A court may sentence any person convicted of a crime committed while that person was a prisoner as defined by § 22-11A-1, to a term of not more than twice the maximum term allowed by the statute for the commission of the same crime by a person not so confined. However, the provisions of this section do not apply if,
>
> (continued . . .)

years in the South Dakota State Penitentiary, with two years suspended, and ordered the sentence to run consecutively to the penitentiary sentence Wolf was already serving.

[¶11.]    The State timely appealed the circuit court's entry of a judgment of acquittal on the conviction for aggravated assault in Count 1 pursuant to SDCL 23A-32-4.[2]   The State raises one issue, arguing that the circuit court erred in granting Wolf's motion for judgment of acquittal on Count 1 because there was sufficient evidence to support the jury's guilty verdict.

**Analysis and Decision**

[¶12.]    We have not previously considered the standard of review applicable to the State's challenge of an order granting a motion for judgment of acquittal after the jury has returned a guilty verdict.  However, a motion for judgment of acquittal attacks the sufficiency of the evidence, which is a question of law whether the motion is considered before or after the jury's verdict.  "Whether the State has provided sufficient evidence to sustain the conviction is a question of law reviewed de novo."  *State v. Hauge*, 2013 S.D. 26, ¶ 12, 829 N.W.2d 145, 149 (citing *State v. Jucht*, 2012 S.D. 66, ¶ 18, 821 N.W.2d 629, 633).

[¶13.]    In reviewing the sufficiency of the evidence, we consider:

---

(. . . continued)

   for the same offense, the prisoner is subject to an enhanced penalty as an habitual offender.

2. SDCL 23A-32-4 provides the State with an appeal, as a matter of right, from an order from the circuit court entering a judgment of acquittal.  *See* SDCL 23A-32-4.  An appeal under SDCL 23A-32-4 must be taken within ten days after the order.  SDCL 23A-32-6.

> [W]hether there is evidence in the record which, if believed by the fact finder, is sufficient to sustain a finding of guilt beyond a reasonable doubt. . . . On review, we accept the evidence and the most favorable inferences that can be fairly drawn from it that support the verdict. We do not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence on appeal. If the evidence including circumstantial evidence and reasonable inferences drawn therefrom sustain a reasonable theory of guilt, a guilty verdict will not be set aside.

*State v. Carter*, 2009 S.D. 65, ¶ 44, 771 N.W.2d 329, 342 (citations omitted).

[¶14.] A person commits aggravated assault under SDCL 22-18-1.1(1) if he "[a]ttempts to cause serious bodily injury to another, or causes such injury, under circumstances manifesting extreme indifference to the value of human life[.]" To sustain a conviction for aggravated assault under subsection (1) the State must prove: "(1) the person either attempted to cause or actually did cause serious bodily injury to another, and (2) the circumstances under which the act was done manifested extreme indifference to the value of human life." *State v. White Mountain*, 477 N.W.2d 36, 39 (S.D. 1991) (quoting *State v. Rash*, 294 N.W.2d 416, 418 (S.D. 1980)).

[¶15.] Serious bodily injury "means an injury which is grave and not trivial, and which gives rise to apprehension of danger to life, health, and limb." *State v. Bogenreif*, 465 N.W.2d 777, 780 (S.D. 1991); *See also*, SDCL 22-1-2(44A). Our Legislature has not declared what circumstances constitute extreme indifference to the value of human life under SDCL 22-18-1.1(1). However, it has "deemed significant the nature of the assaultive act or acts themselves." *State v. Miland*, 2014 S.D. 98, ¶ 18, 858 N.W.2d 328, 332. We have stated that the accused is guilty of aggravated assault for extreme indifference if the "accused's 'conduct was of the

most threatening sort,' such that the circumstances 'demonstrate a blatant disregard for the risk to the victim's life,' and the accused either attempted to or did cause serious bodily injury . . . ." *Id.* ¶ 18, 858 N.W.2d at 333-34 (quoting *State v. Saucier*, 512 A.2d 1120, 1125 (N.H. 1986)[3]). "The severity of the resulting injuries and the accused's state of mind may be germane to the extreme indifference question, but the main focus is on the *conduct* of the accused." *Id.*

[¶16.] The State argues the evidence was sufficient to show that Wolf committed aggravated assault under SDCL 22-18-1.1(1). In considering the motion for judgment of acquittal, the State argues that the circuit court conducted an erroneous review of the evidence presented, invaded the province of the jury, and allowed the jury's acquittal on one count to affect its consideration of another. Wolf argues the circuit court properly granted the motion for judgment of acquittal and cites *Miland*, 2014 S.D. 98, 858 N.W.2d 328, to support his claim that the evidence is insufficient to show that the circumstances manifested extreme indifference to the value of human life as required by SDCL 22-18-1.1(1).

[¶17.] In *Miland*, the defendant was in the passenger seat of a patrol vehicle when he began punching and kicking a law enforcement officer's face and "was trying to get around to the officer's throat." 2014 S.D. 98, ¶¶ 3-4, 858 N.W.2d at 329-30. Despite being struck twice with a baton by another officer, the defendant continued to punch the officer. *Id.* ¶ 5, 858 N.W.2d at 330. The defendant did not stop his attack until he was forcibly removed from the patrol vehicle by two other

---

3. In *Saucier*, the court quoted New Hampshire's comments to the 1969 report on its criminal code that defined "extreme indifference." 512 A.2d at 1125 (quoting N.H. Crim. Code RSA 631:2, III (1985) (comments to 1969 Report)).

officers. *Id.* The attack inside the vehicle lasted less than a minute. *Id.* ¶ 6. The officer suffered a nose injury that required surgery to fix. *Id.* ¶ 7. This Court concluded that evidence existed showing that "[h]ad [the defendant] not been interrupted, obviously he would have continued." *Id.* ¶ 20, 858 N.W.2d at 333. We upheld the aggravated assault conviction because the defendant's "conduct— repeatedly and violently punching the officer in the face without ceasing until he was pulled away—was of the most threatening sort and demonstrated a blatant disregard for the risk to [the officer's] life." *Id.*

[¶18.] Wolf argues the circuit court properly distinguished this case from *Miland* based on the fact that Wolf ceased his attack without third-party intervention, and because there was no evidence that Officer Ekeren sustained serious bodily injury. However, these distinctions simply mark differences in the factual records—not a definitive line that categorically prevents a finding of extreme indifference where an attack abates.

[¶19.] Regardless, the jury could have concluded that, like *Miland*, Wolf did not voluntarily stop his assault and would have continued his assault absent defensive maneuvers by Officer Ekeren. Evidence was presented showing that Officer Ekeren broke out of the chokehold, separated himself, and called for help with a "Code Red." It was after these actions by Officer Ekeren that Wolf backed away.

[¶20.] Moreover, the jury had an opportunity to consider the extent of Officer Ekeren's injuries, along with other evidence in determining whether to convict Wolf of aggravated assault. We have previously rejected a claim that serious bodily

injury must exist to support a conviction under SDCL 22-18-1.1. *Fasthorse*, 2009 S.D. 106, ¶ 10, 776 N.W.2d at 237. In *Fasthorse*, the defendant punched, choked, and threatened to shoot and kill the victim, but the victim sustained only minor injury. *Id.* ¶ 10-11. This Court upheld the jury's guilty verdict under SDCL 22-18-1.1 because the evidence was sufficient to support the jury's conclusion that the defendant "*attempt[ed]* to cause serious bodily injury . . . under circumstances manifesting extreme indifference to the value of human life." *Id.* ¶ 11 (emphasis added).

[¶21.]     Here, a rational trier of fact could have found from the evidence that Wolf attempted to cause serious bodily injuries under circumstances that demonstrated a blatant disregard for the risk to Officer Ekeren's life. Wolf attacked Officer Ekeren while they were alone in Tier 2—a narrow, locked cellblock of the prison consisting of metal bars on each side and a concrete floor. After Officer Ekeren fell to the floor in the initial attack, Wolf began punching and kneeing Officer Ekeren in the face and head. Once Officer Ekeren physically removed himself from the first attack, Wolf put Officer Ekeren in a chokehold that briefly impeded his breathing. While in the chokehold, Wolf attempted to pick up Officer Ekeren and throw him. Wolf later admitted that he "went into a rage" during the attack. Photos taken after the attack showed an abrasion on Officer Ekeren's neck, a cut below his eye, and other abrasions on his face and eye. Wolf's conduct, combined with the circumstances in which the attack occurred, supports the jury's guilty verdict for aggravated assault on Count 1.

[¶22.]    Wolf also argues that the circuit court properly granted his motion for judgment of acquittal because the jury's verdict finding him not guilty of aggravated assault (choking) in Count 3 was inconsistent with a finding of aggravated assault on Count 1. As such, he asserts the chokehold could not support a conviction for aggravated assault (extreme indifference) on Count 1. The circuit court also highlighted the jury's acquittal on Count 3 in its ruling, stating that "the jury did not find sufficient evidence to support a verdict of guilty on the aggravated assault by choking." However, the inconsistency of a jury's verdict between two or more counts is not grounds for entering a judgment of acquittal. *State v. Mulligan*, 2007 S.D. 67, ¶ 11, 736 N.W.2d 808, 814. A defendant "may not use the jury's rejection of [one charge] to infer that there was insufficient evidence to justify [a conviction on another] charge." *Id.* "Instead of speculating whether the inconsistent verdicts are evidence of jury error, [courts] should review the sufficiency of the evidence to support the conviction that was rendered." *Id.* ¶ 12 (citing *United States v. Powell*, 469 U.S. 57, 67, 105 S. Ct. 471, 478, 83 L.Ed. 2d 461 (1984)).

[¶23.]    Officer Ekeren testified that he was choked and that his breathing was briefly impaired. A video presented to the jury confirmed that Wolf put Officer Ekeren in a chokehold. Notwithstanding the verdict on Count 3, the jury could have found that Wolf began choking Officer Ekeren and would have continued to do so absent evasive measures by Officer Ekeren. Such evidence would support a finding that Wolf attempted to cause serious injury "under circumstances manifesting extreme indifference to the value of human life." SDCL 22-18-1.1. There was sufficient evidence on the record, and inferences that could have been

drawn therefrom, to sustain a reasonable theory of guilt of aggravated assault by extreme indifference beyond a reasonable doubt. *See State v. Shaw*, 2005 S.D. 105, ¶ 19, 705 N.W.2d 620, 626.

[¶24.]    We reverse the circuit court's entry of a judgment of acquittal and remand to the circuit court with instructions to reinstate the jury's verdict on Count 1 and impose a sentence.

[¶25.]    GILBERTSON, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.