#29549-a-SRJ
**2022 S.D. 20**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

   v.

KADIR HUSSEIN AHMED,                      Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CAMELA THEELER
Judge

* * * *

JASON R. ADAMS of
Tschetter & Adams Law Offices, P.C.
Sioux Falls, South Dakota                 Attorneys for defendant and
                                         appellant.


JASON R. RAVNSBORG
Attorney General

CHELSEA WENZEL
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff and
                                         appellee.

* * * *

CONSIDERED ON BRIEFS
FEBRUARY 14, 2022
OPINION FILED **04/06/22**

#29549

JENSEN, Chief Justice

[¶1.]      Kadir Hussein Ahmed was charged with multiple counts arising from two separate incidents involving an alleged shooting and a later confrontation between Ahmed and two men.  A jury found Ahmed guilty of seven counts, including aggravated assault by physical menace with a dangerous weapon and grand theft by receiving stolen property.  Ahmed appeals both convictions arguing that the circuit court erred when it denied his motion for judgment of acquittal because there was insufficient evidence to support the convictions.  We affirm.

## Facts and Procedural History

[¶2.]      On July 25, 2020, Angela Graham was awakened around 5:00 a.m. by "some ruckus" and pounding at her door.  After the pounding stopped, Graham claimed she walked outside and saw Ahmed.  Graham alleged that Ahmed shot a gun three times, forcing her to retreat to her apartment and call the police.  During the 911 call, Graham identified the shooter as Ahmed, who was driving a black vehicle.  Graham recognized Ahmed as a friend of her oldest daughter.

[¶3.]      Law enforcement responded to the call.  Upon arrival and a brief inspection of the scene, the officers were unable to observe any evidence of a shooting and left the scene.  Shortly after law enforcement left, Graham made a second 911 call stating that Ahmed had returned to her apartment door.

[¶4.]      Officer Andrew Parrot responded to the second 911 call.  Officer Parrot inspected the apartment and discovered bullet holes in and around the apartment. He believed the interior bullet holes were fresh, however no bullets or casings were found.

[¶5.]      Graham identified Ahmed by his nickname, "K.D.," and shared Ahmed's Facebook profile with law enforcement. Graham also directed law enforcement to an apartment complex in Sioux Falls where Ahmed was staying. Law enforcement also discovered that Ahmed was driving his aunt's black Nissan Versa. Detectives Pat Mertes and Logan Eilers were dispatched to the apartment complex where Ahmed was believed to be staying and located the vehicle registered to Ahmed's aunt in the parking lot. The detectives parked along the street to observe the vehicle. After a few minutes, Ahmed exited his apartment building and left in the vehicle. The detectives attempted to follow Ahmed but lost sight of him.

[¶6.]      The detectives returned to Ahmed's apartment complex and observed Ahmed come out of an apartment building and approach a woman later identified as Racquel Jellis. Jellis was visiting her brother-in-law, Heath Range, and her boyfriend, Mitchell Erickson. Jellis testified that she had never met Ahmed but noticed him approaching her once she arrived at the apartment complex. Jellis became scared of Ahmed's presence and began to quickly walk away from him as he followed her into the apartment building. Once inside Range's apartment, Jellis informed both Erickson and Range that a man had followed her into the building.

[¶7.]      Range and Erickson exited the apartment building to confront Ahmed about his interaction with Jellis. Range asked Ahmed, "What's going on man. That ain't your girlfriend." Range testified that Ahmed then pulled out a silver revolver from the front of his waistband and responded, "don't worry about it," and "you don't want none of this smoke [N-Word]. You don't want none of this smoke." Upon

seeing the gun, Range and Erickson retreated into the apartment building and Ahmed walked away from the building.

[¶8.] The detectives observed the confrontation but due to a privacy fence between the detectives and the three individuals, they could only see the men's faces and top portion of their shoulders. Detective Eilers observed Range and Erickson show surprise or fear during the confrontation and retreat into the apartment building. Detective Eilers did not see a gun.

[¶9.] Ahmed then ran to his vehicle and attempted to leave the apartment complex parking lot. Officers Trent Ehler and Scott Hildebrand arrived at the apartment complex and initiated a traffic stop in the parking lot. As Officer Ehler exited his patrol vehicle, he heard someone yell, "he's got a gun." Ahmed exited his vehicle and ran toward the apartment buildings while holding the front of his waistband. At trial, Officer Ehler explained that based on his training and experience, he believed Ahmed was attempting to stabilize a firearm as he ran. Ahmed ran into an apartment building and locked himself in the apartment for several minutes. Additional officers arrived and directed Ahmed to exit the apartment. Another occupant came out of the apartment first. A few minutes later, Ahmed exited, told the officers that they needed a warrant to search his apartment, and law enforcement detained him without further incident.

[¶10.] Detective Eilers interviewed Ahmed, who was unable to provide a consistent timeline of his day leading up to his arrest. Ahmed claimed that he was having trouble recalling his day because he had been drinking. Ahmed denied any involvement in the shooting earlier that day and denied threatening Range and

Erickson with a gun. Ahmed also asked Detective Eilers several times if she saw him pull a gun while motioning as if he were pulling out a gun from his waistband from the front of his pants. However, Ahmed denied that he had a gun during the confrontation. Ahmed stated that he ran from the officers because he had been drinking and believed an individual named Shalice had called the police on him.

[¶11.] Law enforcement later executed a search warrant for Ahmed's apartment. Officers found several unspent bullet rounds in different locations throughout the apartment, including in the pockets of a pair of pants that contained his personal identification card. The officers also discovered a black bumper in the apartment that matched the vehicle Ahmed was driving. In the apartment bathroom, Detective Mertes found a silver revolver wrapped in a white cloth hidden inside the garbage basket. Inside the revolver was one unspent bullet round, matching the other bullets found inside the apartment. Detective Mertes ran the serial number on the revolver, which revealed that the firearm was reported as stolen. At trial, Cory Burrell testified that in June 2020 his Silver Taurus .38 Special Ultralight revolver was stolen from his vehicle and he identified the gun found in Ahmed's apartment as his gun.

[¶12.] A grand jury indicted Ahmed on multiple counts stemming from the shooting at Graham's apartment and the later confrontation at Ahmed's apartment. Count 7 of the indictment charged Ahmed with a Class 3 felony for aggravated assault by physical menace with a deadly weapon pursuant to SDCL 22-18-1.1(5),

stemming from the confrontation with Erickson outside the apartment.[1] Count 11 charged Ahmed with a Class 6 felony for grand theft by receiving stolen property pursuant to SDCL 22-30A-17(2) and SDCL 22-30A-7, stemming from the firearm recovered at his apartment. At trial, Ahmed moved for a judgment of acquittal on all charges. The court took the motion for judgment of acquittal on Count 11 under advisement but denied the motion as to all other counts.[2] The jury found Ahmed guilty on seven of the fourteen counts, including Counts 7 and 11. The convictions on seven of the charges all arose from the events at Ahmed's apartment complex. The jury found Ahmed not guilty on all the charges arising from the alleged shooting earlier in the day at Graham's apartment.

[¶13.]	Ahmed appeals his convictions for aggravated assault by physical menace against Erickson in Count 7 and for grand theft by receiving stolen property in Count 11 arguing that the circuit court erred in denying his motion for judgment of acquittal.

## Analysis and Decision

[¶14.]	"[A] motion for judgment of acquittal attacks the sufficiency of the evidence, which is a question of law whether the motion is considered before or after the jury's verdict." *State v. Wolf*, 2020 S.D. 15, ¶ 12, 941 N.W.2d 216, 220. "A question regarding the sufficiency of the evidence to sustain a conviction is reviewed

---

1.	Count 8 of the indictment alleged a separate charge for aggravated assault by physical menace with a deadly weapon as to Heath Range. Ahmed was convicted of Count 8 but does not challenge this conviction on appeal.

2.	The court did not formally rule on the motion for judgment of acquittal as to Count 11 but submitted the charge to the jury and imposed a sentence on the conviction after the guilty verdict was entered.

de novo." *State v. McReynolds*, 2020 S.D. 65, ¶ 11, 951 N.W.2d 809, 814. When reviewing the sufficiency of the evidence, the Court considers "[w]hether there is evidence in the record which, if believed by the fact finder, is sufficient to sustain a finding of guilt beyond a reasonable doubt." *Wolf*, 2020 S.D. 15, ¶ 13, 941 N.W.2d at 220 (citation omitted). On review, the Court "accept[s] the evidence and the most favorable inferences that can be fairly drawn from it that support the verdict." *Id.* (quoting *State v. Carter*, 2009 S.D. 65, ¶ 44, 771 N.W.2d 329, 342). This Court does not "resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence on appeal. If the evidence including circumstantial evidence and reasonable inferences drawn therefrom sustain a reasonable theory of guilt, a guilty verdict will not be set aside." *Id.* (quoting *Carter*, 2009 S.D. 65, ¶ 44, 771 N.W.2d at 342).

### I. Count 7 – Aggravated Assault by Physical Menace against Mitchell Erickson.

[¶15.] Any individual who "[a]ttempts by physical menace with a deadly weapon to put another in fear of imminent serious bodily harm . . . is guilty of aggravated assault." SDCL 22-18-1.1(5). "The gravamen of the offense is the attempt to put a person in fear of imminent serious bodily harm. Actual fear of imminent serious bodily harm is not an essential element of the offense." *State v. LaCroix*, 423 N.W.2d 169, 170 (S.D. 1988). "Physical menace 'requires more than words: there must be some physical act on the part of the defendant.'" *State v. Scott*, 2019 S.D. 25, ¶ 19, 927 N.W.2d 120, 127 (quoting *In re R.L.G.*, 2005 S.D. 119, ¶ 10, 707 N.W.2d 258, 261).

[¶16.]     Ahmed argues his conviction for aggravated assault against Erickson is not supported by sufficient evidence because he never pointed the gun at Erickson and his singular use of the N-Word indicates the threatening act was solely directed towards Range.  Ahmed also argues that because Erickson did not testify at trial and the detectives' view was obstructed, the evidence was insufficient to show that Erickson had an actual fear of imminent serious bodily harm.  The State responds that Ahmed's act of brandishing a firearm in Erickson's proximity and his threatening statements are sufficient to sustain the conviction.

[¶17.]     This Court has previously affirmed a circuit court's denial of a motion for judgment of acquittal on a charge for aggravated assault by physical menace despite the absence of any evidence that the defendant directly pointed a gun at the victim.  *State v. Schmiedt*, 525 N.W.2d 253, 255 (S.D. 1994).  In *Schmiedt*, this Court found a defendant's command to a law enforcement officer not to come any closer, combined with the defendant suddenly grabbing a loaded firearm and keeping the firearm at his side, supported a conviction for aggravated assault by physical menace.  *Id.*  Furthermore, in discussing the factual basis for a charge under SDCL 22-18-1.1(5), we have stated that whether the defendant "pointed [a gun] at the victims and [whether] it was loaded or unloaded makes no difference." *See State v. Waters*, 529 N.W.2d 586, 588 (S.D. 1995) (affirming the circuit court's decision to reject a lesser included instruction for simple assault because the defendant used "a deadly weapon for the purpose of this offense, during this incident"); *see also State v. Schumacher*, 2021 S.D. 16, ¶ 31, 956 N.W.2d 427, 435 (finding sufficient evidence to support a conviction under SDCL 22-18-1.1(5) when

-7-

the defendant held a gun on her shoulder, pointed it in the air, and later pointed the barrel in the general direction of two law enforcement officers as she was setting it down).

[¶18.] The evidence shows Erickson and Range approached Ahmed and confronted him about his interaction with Jellis. Range testified that, in response, Ahmed pulled the firearm from his waistband and pointed it directly at Range's head. Ahmed was in close proximity to both Erickson and Range, in sole control of the firearm, and used threatening language during the interaction. Given Ahmed's close proximity to Erickson and Range, and his ability to instantly utilize the firearm against Erickson or Range, a jury could have reasonably concluded that Ahmed attempted to put both Erickson and Range in fear of imminent serious bodily harm.

[¶19.] Ahmed's claim that Erickson was required to testify to show that Erickson feared imminent harm from Ahmed also fails. "[T]he State need not prove 'actual fear of imminent serious bodily harm.'" *Scott*, 2019 S.D. 25, ¶ 19, 927 N.W.2d at 127 (quoting *LaCroix*, 423 N.W.2d at 170). We have recognized that "an attempt to put another in fear" is sufficient to support a conviction. *Id.* An attempt includes "any act toward the commission of the crime but fails or is prevented or intercepted in the perpetration thereof." *Id.* (citation omitted). Range's testimony was sufficient for the jury to find that Ahmed, through his words and actions, attempted to place both Range and Erickson in fear of imminent serious bodily harm. Further, although it was unnecessary to prove the alleged victims were actually afraid, Detective Eilers testified that Range and Erickson looked "surprised

or afraid" moments before they retreated into the apartment building. Detective Eilers also testified that Range and Erickson were shaking, anxious, and appeared very upset when she spoke with them immediately after their encounter with Ahmed.

[¶20.] This Court examines the evidence in its totality and does not reweigh evidence or pass on the credibility of witnesses. *Carter*, 2009 S.D. 65, ¶¶ 44–45, 771 N.W.2d at 342. The evidence presented to the jury, including the testimony from Range and law enforcement, and the reasonable inferences drawn therefrom, support a reasonable theory of guilt. Therefore, the circuit court did not err in denying Ahmed's motion for judgment of acquittal on the aggravated assault by physical menace conviction.

## II. Count 11 – Grand Theft by Receiving Stolen Property.

[¶21.] SDCL 22-30A-7 provides that "[a]ny person who receives, retains, or disposes of property of another knowing that the property has been stolen, or believing that the property has probably been stolen, unless the property is received, retained, or disposed of with the intent to restore the property to the owner, is guilty of theft." Grand theft by receiving stolen property is a Class 6 felony if the stolen property "[i]s a firearm with a value of less than or equal to two thousand five hundred dollars[.]" SDCL 22-30A-17(2).

[¶22.] Ahmed initially argues the State failed to provide sufficient evidence that he was ever in possession of the firearm, or that he knew or should have known the firearm was stolen as required by SDCL 22-30A-7. Ahmed highlights that there was no evidence that he was actually in possession of the stolen firearm, how the

firearm ended up in the garbage basket, or any evidence of fingerprints or DNA found on the firearm. The State points to Range's testimony and Officer Ehler's dash cam footage and testimony to show that Ahmed was in possession of the firearm just before it was found in his apartment. The State also asserts there was sufficient evidence to support that Ahmed knew the firearm was stolen based upon the circumstances presented at trial.

[¶23.] This Court does not "resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence on appeal." *Wolf*, 2020 S.D. 15, ¶ 13, 941 N.W.2d at 220 (citation omitted). Further, "[a]ll elements of a crime . . . may be established circumstantially." *State v. Falkenberg*, 2021 S.D. 59, ¶ 39, 965 N.W.2d 580, 591 (quoting *State v. Shaw*, 2005 S.D. 105, ¶ 45, 705 N.W.2d 620, 633). "Direct and circumstantial evidence have equal weight. In fact, in some instances circumstantial evidence may be more reliable than direct evidence." *Id.* (quoting *State v. Riley*, 2013 S.D. 95, ¶ 18, 841 N.W.2d 431, 437).

[¶24.] From our review of the record, there was sufficient evidence supporting the jury's determination that Ahmed had possession of the firearm and the requisite knowledge that the firearm was stolen. Range testified that Ahmed pulled a silver revolver from his waistband. Additionally, Officer Ehler's dash cam showed Ahmed running to his apartment building while holding onto the front of his waistband, which Officer Ehler testified is a common running position used to secure a firearm. Inside Ahmed's apartment, law enforcement found a firearm matching the one described by Range at the bottom of a garbage basket wrapped in a cloth. Law enforcement also found a pair of pants that contained Ahmed's personal

identification card and bullets for the firearm. The owner of the firearm testified that the firearm found in Ahmed's apartment was stolen from his vehicle approximately a month earlier. Accepting this evidence and the most favorable inferences drawn therefrom, the evidence supports the jury's determination that Ahmed was in possession of the firearm and knew or believed that it was stolen.

[¶25.] Ahmed also argues that the State was required to present evidence of the value of the firearm to prove that he was guilty of a Class 6 felony under SDCL 22-30A-17(2). He claims that the value of the firearm was an essential element of the offense. Grand theft is a Class 6 felony if the stolen property "[i]s a firearm with a value of less than or equal to two thousand five hundred dollars[.]" SDCL 22-30A-17(2). Under SDCL 22-30A-17, the State is required to prove the value of the stolen property beyond a reasonable doubt, but the exact value of the property is not important unless the value of the item stolen is close to the relevant statutory amount or level. *State v. Iron Necklace*, 430 N.W.2d 66, 81 (S.D. 1988).

[¶26.] SDCL 22-30A-17(2) provides that the theft of a "firearm with a value of *less than* or equal to two thousand five hundred dollars" is a Class 6 felony. (Emphasis added.); *see State ex rel. Dep't. of Transp. v. Clark*, 2011 S.D. 20, ¶ 10, 798 N.W.2d 160, 164 ("In matters of statutory interpretation, [this Court begins] with the plain language and structure of the statute." (citation omitted)). Under the plain language of the statute, a theft of any firearm, regardless of value, is at least a Class 6 felony. Therefore, the State did not have to present evidence of the firearm's exact value in order for the jury to find Ahmed guilty of a Class 6 felony for receiving stolen property.

[¶27.] Another jurisdiction applying similar statutory language reached a similar conclusion. *See generally Blair v. State*, 562 S.W.3d 261 (Ark. Ct. App. 2018). In *Blair*, the defendant was charged with theft by receiving stolen property, a Class D felony, under a statute with nearly identical language to SDCL 22-30A-17(2), which states that "theft by receiving is a class D felony *if the property is a firearm valued at less than $2500*." *Id.* at 264 (emphasis added); *see also* Ark. Code. Ann. § 5-36-1-6(e)(3)(B)(iii). The prosecution did not present any evidence of the value of the firearm. *Id.* The court affirmed the defendant's conviction finding that "[t]heft by receiving of a firearm is at least a Class D felony regardless of the weapon's value, and the State is not required to establish the value of the firearm in order to obtain a conviction." *Id.*

[¶28.] At trial, the jury was shown pictures of the firearm, and heard testimony from the owner that he purchased the firearm from Gary's Gun Shop and that the firearm had been stolen. Therefore, the jury was reasonably able to conclude that the firearm had been stolen and had some value less than $2,500. Based on the evidence presented and the reasonable inferences drawn therefrom, there was sufficient evidence to support the jury's guilty verdict of grand theft by receiving a stolen firearm.

[¶29.] We affirm the circuit court's denial of the motion for judgment of acquittal on both counts.

[¶30.] KERN, SALTER, DEVANEY, and MYREN, Justices, concur.